**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 16-06221-JW |
| | Chapter 13 |
| Angela Wanetta Brown, | **AMENDED ORDER**[1] |
| Debtor. | |

This matter comes before the Court for confirmation of Angela Wanetta Brown's ("Debtor") chapter 13 plan. Steven Forester ("Forester") filed an objection ("Objection to Confirmation"). A confirmation hearing was held and the Court took the Objection to Confirmation under advisement. The Court makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52, which is made applicable to this contested matter by Fed. R. Bankr. P. 7052 and 9014(c).[2]

**FINDINGS OF FACT**

1.  On May 14, 2008, Debtor and Forester entered an agreement entitled "Agreement to Sell Real Estate" ("Agreement"), which involved certain real property better known as 64 Sydneys Loop in Kingstree, South Carolina and a manufactured home ("Subject Property"). The Agreement is contained on a pre-printed form with handwritten provisions. Each page of the Agreement was initialed by both Debtor and Forester.

2.  The Agreement provides that Forester agreed to sell and Debtor agreed to buy the Subject Property for a price of $38,000. The Agreement includes two provisions

---

[1] This Amended Order is issued to delete an extraneous finding of fact contained in the original Order.

[2] To the extent the following findings of fact are conclusions of law, they are so adopted; and vice versa.

1

regarding the payment of the purchase price. The first provision describes the method of payment:[3]

Method of Payment:

(a) Deposit to be held in trust by *Steven D. Forester*

*$2,000.00/Payable by June 1, 2008*

(b) Approximate principal balance of first mortgage to which conveyance shall be subject, if any. Mortgage Holder: *Steven D. Forester*

*$36,000.00*

Interest *$475 mo/20 years* percent per annum.

(c) Other:_____

$_____

(d) Case, certified or local cashier's check on closing and delivery of deed (or such greater or lesser amount as may be necessary to complete payment of purchase price after credits, adjustments and prorations).

$   *N/A*

The second provision, handwritten into the clause entitled "Restrictions, Easement, Limitations," provides: "*This contract is for the purchase of property and mobile home in 'as is' condition. After Deposit, [Debtor] will pay $475.00 per month for a duration of 240 months (20 years).*"

    3.    The "Restriction, Easement, Limitations" clause of the Agreement also includes certain duties of Debtor including that: "[*Debtor*] *to* [sic] *maintain property and insure property for insurance purposes, payable to mortgage holder* [(Forester)], *for a*

---

[3] For demonstration purposes, when quoting the Agreement, the Court will indicate handwritten language by denoting it in italics.

*minimum of $38,000 for the duration of said loan. Buyer will also assume responsibility for all taxes."*

4. The Agreement also includes a provision entitled "Default by Buyer," which permits Forester to retain all money paid by Debtor as agreed upon liquidated damages if Debtor defaults on the Agreement.

5. Under the "Documents for Closing" clause, the Agreement provides that "[Forester's] attorney shall prepare deed, note, mortgage, [Forester's] affidavit, any corrective instruments required for perfecting the title, and closing statement and submit copies of same to [Debtor's] attorney . . . at least 2 days prior to scheduled closing date."

6. The Agreement does not provide a date for when the property would be conveyed to Debtor. The pre-printed provision setting a closing date to deliver a deed to Debtor was left blank, without a handwritten insertion of the date.

7. The Agreement contains a handwritten provision entitled "Special Clauses" that provides:

> Special Clauses: *Buyer, at their expense, shall seek legal council* [sic] *and have property deeded to their name with proper mortgage holder listed on said deed. Any monies, including monthly payment paid by buyer shall be deducted from original purchase price at that time. Time is of the essence. Failure to comply with said agreement will result in foreclosure and eviction proceedings.*

8. While the Agreement provides that Debtor is to maintain insurance on the Subject Property, the Agreement provides that Forester is responsible for any risk of loss resulting from fire or casualty until the closing date of the Agreement.

9. The remainder of the Agreement contains provisions typically contained in a contract to sell real estate, including provisions regarding: inspections, radon gas, lead paint, leases, and commissions to brokers.

10. Pursuant to the Agreement, Debtor paid the $2,000 deposit and made monthly payments under the Agreement for several years. According to the amended proof of claim filed by Forester on February 8, 2017, Debtor has paid 99 monthly payments under the Agreement, or a total of $47,025.[4]

11. Since the entry of the Agreement, title to the Subject Property has remained in Forester's name, and neither a deed, a promissory note, or a mortgage were executed by the parties.

12. On January 2, 2014, Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code (C/A No. 14-00023-jw) ("First Bankruptcy Case"). Debtor's First Bankruptcy Case was dismissed on February 19, 2014, upon the motion of Debtor.

13. On March 6, 2014, Debtor filed a second petition for relief under Chapter 13 of the Bankruptcy Code (C/A No. 14-01351-jw) ("Second Bankruptcy Case").

14. Forester, acting *pro se*, filed an objection to confirmation and Debtor's motion to extend the automatic stay in the Second Bankruptcy Case on March 31, 2014, alleging that Agreement was null and void due to Debtor's noncompliance, and that the parties' relationship is now a landlord/tenant relationship. At the confirmation hearing in the Second Bankruptcy Case, the parties reached a resolution in which counsel for the Debtor would file a proof of claim on behalf of Forester indicating that the Agreement was a secured claim in the amount of $13,512.31. On July 10, 2014, Debtor's counsel filed the proof of claim on behalf of Forester.

15. On September 8, 2015, Debtor's Second Bankruptcy Case was dismissed for Debtor's failure to make payments to the Chapter 13 Trustee.

---

[4] Forester indicated and Debtor did not dispute that Debtor has been previously late in making certain monthly payments.

4

16. On December 9, 2016, Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code.

17. On December 30, 2016, Debtor filed a proposed chapter 13 plan. Under the section of Debtor's plan dealing with the assumption and rejection of executory contracts, Debtor lists Forester's claim and indicates that: "Debtor believes debt is fully paid and Creditor Steven Forester should release title to land and mobile home." Debtor's proposed chapter 13 plan has since been amended multiple times; however, the treatment of Forester's claim has remained the same with each amendment. For the purposes of this Order, the Court will collectively refer to the December 30, 2016 proposed chapter 13 plan and all amendments thereto as the "Proposed Chapter 13 Plan."

18. On January 26, 2017, Forester, represented by counsel, filed the Objection to Confirmation, alleging that due to Debtor's prior defaults on the Agreement, the parties entered into a landlord/tenant relationship and the Subject Property should not be conveyed to Debtor.

19. Also on January 26, 2017, Forester filed a proof of claim asserting an unsecured claim in the amount of $3,875 for outstanding rent payments.

20. On February 13, 2017, Forester filed an amended proof of claim asserting a secured claim based on the Agreement in the amount of $42,259.28.

21. At the confirmation hearing, Forester argued that the Agreement is a secured mortgage and that it provides for the payment of interest of 15% annually over twenty years. Forester asserts that the Proposed Chapter 13 Plan cannot be confirmed as it does not properly treat his claim and because Debtor has not fully paid the purchase price and is therefore not entitled to a deed.

22. During his testimony, Forester indicated that he believed the Agreement was a mortgage, that the parties intended for the payment of interest, and that it was his intention to convey the Subject Property to Debtor only upon her completion of all the payments under the Agreement. He further indicated that for prior defaults under the Agreement, he commenced eviction actions because he "could not foreclosure upon" himself.

23. Debtor testified that she believed the Agreement was a contract for sale. She further testified that she was never informed of the interest rate and believed that no interest would be charged on the Agreement. She also indicated that the Agreement was drafted entirely by Forester.

## CONCLUSIONS OF LAW

The parties dispute the nature of the Agreement. Debtor, in her proposed Chapter 13 plan, alleges that the Agreement is an executory contract, which she completed pre-petition, and that Forester should release title to the Subject Property to her. To support this position, Debtor alleges that the Agreement does not provide for the payment of interest. Therefore, Debtor asserts that she had made enough monthly payments to pay the $38,000 purchase price. However, Forester alleges that the Agreement is a secured mortgage and that it provides for interest at a rate of 15% per year. As such, Forester alleges that Debtor is not entitled to a conveyance of the Subject Property because Debtor has not fully paid the purchase price. Therefore, Forester alleges the Proposed Chapter 13 Plan should not be confirmed. This matter requires the Court to interpret the Agreement under applicable state law.

*Choice of Law*

Under South Carolina law, unless otherwise agreed to by the parties, "[a] contract is controlled by the laws of the State in which it is made and is to be performed." Doctors Hosp. of Augusta, L.L.C. v. CompTrust AGC Workers' Compensation Fund, 371 S.C. 5, 9, 636 S.E.2d 862, 864 (2006) (internal quotation marks omitted). The Agreement does not include a choice of law provision. Therefore, because the Agreement was drafted and performed in South Carolina and involves the sale of real property located in the state, South Carolina law applies.

*Contract Interpretation*

In interpreting a contract, "the paramount rule of construction is to ascertain and give effect to the intent of the parties as determined from the whole document." Taylor v. Lindsey, 332 S.C. 1, 4, 498 S.E.2d 862, 863–64 (1998). When interpreting a contact, courts should begin with the plain language of the agreement. Stevens Aviation, Inc. v. DynCorp Int'l LLC, 407 S.C. 407, 416, 756 S.E.2d 148, 152 (2014) (quoting Gould Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991). "It is not the function of the court to rewrite contracts for parties." Lewis v. Premium Inv. Corp., 351 S.C. 167, 171, 568 S.E.2d 361, 363 (2002). Courts should read the contract as a whole so as to provide meaning to all provisions of the contact. See McGill v. Moore, 381 S.C. 179, 185, 672 S.E.2d 571, 574 (2009) ("A contract is read as a whole so that one may not create an ambiguity by pointing out a single sentence or clause."); Skull Creek Club Ltd. P'Ship v. Cook & Book, Inc., 313 S.C. 283, 286, 437 S.E.2d 163, 165 (Ct. App. 1993) ("In arriving at the intention of the parties, [the contract] must be construed as a whole and different provisions dealing with the same subject matter are to be read together.").

7

If the contract is ambiguous, a court may rely on parol evidence to determine the meaning of the contract. See Klutts Resort Realty, Inc. v. Down'Round Dev. Corp., 268 S.C. 80, 89, 232 S.E.2d 20, 25 (1977) ("[I]t is the general rule that parol evidence is admissible to show the true meaning of an ambiguous written contract."). "Such a contract is one capable of being understood in more ways than just one, or an agreement unclear in meaning because it expresses its purpose in an indefinite manner." Id.

Finally, any remaining doubts or ambiguities in a contract should be construed against the drafter of the contract. Mathis v. Brown & Brown of S. Carolina, Inc., 389 S.C. 299, 309, 698 S.E.2d 773, 778 (2010). "After all, the drafting party has the greater opportunity to prevent mistakes in meaning. It is responsible for any ambiguity and should be the one to suffer from its shortcomings." S. Atl. Fin. Servs. Inc. v. Middleton, 356 S.C. 444, 447, 590 S.E.2d 27, 29 (2003). As to the current matter, based on the evidence, the Court finds that Forester was the drafter of the Agreement.

*Nature of the Agreement*

In the present matter, the parties dispute the nature of the Agreement as to whether it is secured mortgage or an executory contract. The Agreement is a pre-printed form, which appears to be a contract to sell real estate that has been modified by handwritten provisions. Apparently, neither party sought counsel in drafting or entering the Agreement. Due to its piecemeal construction, the Agreement contains several disconnected provisions regarding the nature and effect of the document.[5]

---

[5] The Agreement indicates that it involves real property located at 64 Sydneys Loop in Kingstree, South Carolina as well as a manufactured home located on the property. The parties did not present any evidence at the hearing, or otherwise indicate, whether the manufactured home is affixed to the real property or is separate personal property. As the Agreement treats the real property and manufactured home as a single unit, and without indication otherwise, the Court will consider for the purposes of this Order that the manufactured home has been affixed to the real property. The Court notes that if the manufactured home were considered as not affixed, it may result in a different analysis.

8

Some of the provisions suggest that it is in the nature of an installment land contract. Under an installment land contract, "[r]eal property is often sold under contracts that provide for the payment of the purchase price in a series of installments." Lewis, 351 S.C. at 170, 568 S.E.2d at 363 (internal quotations omitted). The seller in an installment land contract "retains legal title to the property until all of the purchase price has been paid [,] . . . the purchaser is entitled to immediate possession[.] . . . Installment contract almost always contain forfeiture clauses . . . [that enable the seller] to terminate the contract, recover the property, and retain all installments paid when the purchaser defaults." Id. at 170–71, 568 S.E.2d at 363 (internal quotations omitted).

The title of the Agreement, "Agreement to Sell Real Estate," suggests an installment land contract. Further, the Agreement centers around the sale of property as it states that "[Forester] shall sell and [Debtor] shall buy the . . . described property UPON THE TERMS AND CONDITIONS SET FORTH, within this contract." In a handwritten portion of the Agreement, it provides for payments of the purchase price in future installments: "*[t]his contract is for the purchase of property and mobile home in "as is" condition. After deposit, [Debtor] will pay $475.00 per month for a duration of 240 months (20 years).*" In addition, the Agreement does not provide a clear date for when the Subject Property will be conveyed or otherwise deeded to the Debtor.[6] Further, the Agreement contains a forfeiture clause that is common to installment land contracts: "If [Debtor] fails to perform any of the covenants of this contract, all money paid pursuant to this contract by [Debtor] . . . shall be retained by or for the account of [Forester] as consideration for the

---

[6] Specifically, the Agreement provides that "[t]his contract shall be closed and the deed and possession shall be delivered on or before the _____ day of _____, 20_____, unless extended by other provisions of this contract."

9

execution of this contract and as agreed liquidated damages and in full settlement of any claims for damages."[7]

Nonetheless, the Agreement also contains references to a mortgage.[8] Under the provision titled "Method of Payment," the Agreement states that the $38,000 purchase price will consist of a $2,000 deposit paid to Forester as well as $36,000 as the "Approximate principal balance of first mortgage to which conveyance shall be subject, if any. Mortgage Holder: *Steven D. Forester*[.]" In reference to the maintenance of insurance on the Subject Property, the Agreement provides in a handwritten portion that Debtor is to "*insure property for insurance purposes, payable to mortgage holder, for a minimum of $38,000 for the duration of said loan.*" The Agreement also provides that "[*Debtor*], *at their expense, shall seek legal council* [sic] *and have property deeded to their name with proper mortgage holder listed on said deed.*" While the Agreement states that Debtor shall seek legal counsel to have the property deeded, it does not state when Forester is to convey title to Subject Property. Unlike a traditional purchase money mortgage transaction, the Subject Property was not conveyed to Debtor at the time of the agreement, and the Subject

---

[7] The Court also notes that Forester's own amended proof of claim filed on February 8, 2017 does not refer to the Agreement as a mortgage but as a "Contract of Sale" and a "Land Sales Contract and Deed."

[8] Forester did not allege or otherwise request a finding that the Agreement constitutes an equitable mortgage. The Supreme Court of South Carolina has recently addressed equitable mortgages:

> [A]n equitable mortgage is a transaction that has the intent but not the form of a mortgage which a court will enforce in equity to the same extent as a mortgage. Stated simply, where one party conveys a deed to another, but the evidence surrounding the transaction indicates the land transfer was intended only to secure a debt, a court may refuse to treat the conveyance as a sale and instead equitably impose on the parties the mortgage they intended to create.

Walter v. Brooks, 414 S.C. 343, 778 S.E.2d 477 (2015). The burden to establish an equitable mortgage is high as it must be established by clear and convincing evidence. Id. at 350, 778 S.E.2d at 481. As an equitable mortgage has not been asserted, the Court will not consider it in deciding this matter.

Property has not since been conveyed to Debtor. The parties did not execute a separate promissory note as part of the purchase transaction. In addition, neither party testified that they expected the Subject Property to be conveyed to Debtor at the outset of the Agreement.

Further, the Agreement suggests that a different document may serve as a mortgage. For example, the Agreement provides that "[Forester's] attorney shall prepare deed, note, mortgage . . . and submit copies of same to [Debtor's] attorney . . . at least 2 days prior to scheduled closing date." The record does not reflect that a separate document was drafted or executed by the parties to serve as a mortgage.

Considering only its language, the Agreement can be understood in multiple ways, and its meaning is unclear. The Agreement is ambiguous as a reasonable person could interpret the document as an installment contract, a mortgage, or an agreement to enter a mortgage transaction. Therefore, the Court will also consider parol evidence to determine the parties' intent as to the nature of the Agreement and when the property was to be deeded to Debtor.

The testimony of the parties suggests an intention that the Agreement is an installment land contract. During his testimony, while stating that he believed the Agreement is a mortgage and that he acted as "the bank" in the transaction, Forester indicated that he has always intended to transfer the Subject Property to Debtor only upon Debtor's completion of payments under the Agreement, and not at the time of the entry of the Agreement. Debtor also testified that it was her understanding that the Agreement was a contract to buy the Subject Property.

11

Considering that the primary objective in construing a contract "is to ascertain and give effect to the intention of the parties,"[9] the Court finds that the parties' intent under the Agreement was for Debtor to take immediate possession of the Subject Property while making monthly installment payments to Forester for twenty years, and upon payment of the purchase price, Forester was to deed the Subject Property to Debtor. These intentions are in line with the criteria of an installment land contract as outlined by the Supreme Court of South Carolina. See Lewis, 351 S.C. at 171, 568 S.E.2d at 363. Therefore, the Court concludes that the Agreement was intended to be an installment land contract and not a mortgage contract.

The undersigned has previously addressed whether an installment land contract is an executory contract or a security device in In re Kingsmore, 295 B.R. 812 (Bankr. D.S.C. 2002). In Kingsmore, the Court noted that the nature of an installment land contract depends on whether state law treats the contract as a sale and financing device (which creates an equitable interest in the property to the purchaser) or as executory in nature, with the former creating a security interest and the latter creating an executory contract. Id. at 821. After analyzing South Carolina case law, the Court noted that while there is a conflict in decisions, South Carolina law holds that installment land contracts are generally executory contracts. Id. at 822–26.[10]

In the present matter, the remaining obligations under the Agreement also demonstrate that the Agreement is executory. The agreement requires mutual continuing

---

[9] S. Atl. Fin. Servs., Inc. v. Middleton, 349 S.C. 77, 80, 562 S.E.2d 482, 484 (Ct. App. 2002).

[10] The Court has reviewed the South Carolina case law that has been issued since this Court's opinion in Kingsmore and has determined that South Carolina law has not changed since the issuance of Kingsmore. A contract with the right to purchase land is generally an executory contract under South Carolina law.

12

duties of the parties, including Debtor's payment of the entire purchase price through monthly installments before Forester will convey the Subject Property to her. Debtor also has the continuing duty to maintain the property until the "closing date" of the Agreement, which is when the Subject Property will be deeded to Debtor.[11] In addition, Forester continues to bear the risk of loss on the property until the "closing date." Therefore, for the foregoing reasons, the Court finds that the nature of the Agreement is executory that the Debtor may assume or reject under 11 U.S.C. § 365.[12]

### *Payment of Interest under the Agreement*

Equally as important as the nature of the Agreement is the determination of whether the Agreement provides for the payment of interest as this will determine whether Debtor has completed her obligations under the Agreement. Debtor asserts that the Agreement does not require the payment of interest on the purchase price because a specified interest rate is not listed in the Agreement. While Debtor has not made all of her payments under the Agreement, she has made monthly payments in an amount greater than $38,000 (the purchase price); therefore, Debtor asserts that she is entitled to a conveyance of the Subject Property. Forester contends that the Agreement properly provides for interest, and that it

---

[11] The Supreme Court of South Carolina has also indicated that a forfeiture provision, like the one contained in the Agreement, may prevent a purchaser in an installment land contract from claiming an equitable interest the property being purchased. See Lewis, 351S.C. at 173 n.4, 568 S.E.2d at 361 n.4. This further suggests that the Agreement was executory in nature.

[12] In Debtor's Second Bankruptcy Case, Debtor's counsel filed a proof of claim on behalf of Forester indicating that he holds a secured claim based on the Agreement. The Debtor's prior case was subsequently dismissed on September 8, 2015. Debtor has made arguments relating to the proof of claim filed in the previous case. However, the Court never made explicating findings about the Agreement in the Second Bankruptcy Case, as the parties settled Forester's objection to confirmation in that case by filing the proof of claim in question. For these reasons, the Court does not consider actions in the dismissed Second Bankruptcy Case to be conclusive of the issues before the Court in this case. See 11 U.S.C. § 349.

was never the intent of the parties to permit the purchase of the Subject Property over a long term without interest.

"The rules of construction applicable to contracts generally are applied in interpreting agreements for the payment of interest." 44B Am. Jur. 2d Interest and Usury § 23 (2017) (citing Mishoe v. General Motors Acceptance Corp., 234 S.C. 182, 107 S.E.2d 43 (1958)). Therefore, the determination of whether interest was to be paid on the Agreement will depend on the language of the Agreement and the intent of the parties at the time of its entry.

The language of the Agreement contains a reference to interest next to the purchase price of the Subject Property and, in the portion of the pre-printed form where the annual interest rate is to be listed, the Agreement contains handwritten language listing the monthly payment terms, "*$475 mo/20 years*." While the provision does not state the interest rate, this language indicates an intent for interest. The Agreement further describes the payment obligations in the following manner: "*This Contract is for the purchase of property and mobile home in 'as is' condition. After deposit, [Debtor] will pay $475.00 per month for a duration of 240 months (20 years).*" This provision is clear in regards to Debtor's payment obligations. She was to pay $475 per month for twenty years. These payments, upon completion of the Agreement, required Debtor to pay a total of $114,000 to Forester over twenty years, which amounts to a 15% annual interest rate on the $36,000 remaining balance of the purchase price. The Agreement is not ambiguous about Debtor's monthly payment obligations, and Debtor initialed the page containing this handwritten provision. Considering the significant difference between the amount of the purchase price

14

and the amounts to be paid under the Agreement, this language suggests that the parties intended for the payment of interest at 15% under the Agreement.

Further, Debtor's payment history after the entry of the Agreement suggests that parties intended for the payment of interest. Pursuant to the Agreement, Debtor made monthly payments in the amount of $475, and upon paying a total of $36,000 (the remaining balance of the purchase price) in the monthly payments, she continued to make monthly payments under the Agreement.[13] In total, Debtor has paid nearly $50,000 under the Agreement, $12,000 more than the purchase price listed in the Agreement. This continuation of payment indicates that Debtor understood that the Agreement called for more than the just the payment of the purchase price.[14]

While the parties have not provided case law or other authority to support their positions regarding the payment of interest, the Court also finds the unpublished opinion of the Court of Appeals of South Carolina in Heos v. Lawton, 2012 WL 10826242 (S.C. Ct. App. Jan. 25, 2012) to be instructive in this matter. In Heos, the purchaser under an installment land contract appealed the Master-in-Equity's ruling that the contract provided for interest. Id. at *1. The installment land contract did not include a specific interest provision and did not state the rate of interest; rather it provided that "Purchaser to pay seller $500 per month for a total of 144 months (12 years) at which time seller will give purchaser a clear deed and title." Plaintiff's Ex. 3 at 1 Heos v. Lawton, 2008-CP-40-03950

---

[13] The Court notes that two months prior to the filing of the Present Bankruptcy Case, on October 26, 2016, Debtor retained counsel who sent a letter to Forester seeking his execution of a deed of the Subject Property. The Court does not find these actions to be persuasive of the parties' intent at the time of the execution of the Agreement.

[14] Debtor's testimony indicated that she was not informed that interest would be paid under the Agreement. Forester testified that the parties intended for interest under the Agreement. The Court finds this testimony to be self-serving; and therefore, puts little weight into either parties' testimony on the subject of the payment of interest under the Agreement.

15

(Richland Cnty. Ct. Com. Pl. 2009). Based on the contract's purchase price, the monthly payments would result in a 22.31% annual interest rate over the term of the contract. Heos, 2012 WL 10826242 at *1. The Court of Appeals of South Carolina noted that "[t]his precise provision in the contract is clear and cannot be dismissed[,]" and ultimately held that "the contract is not ambiguous, and the master properly found the parties' contract required Purchaser to pay 22.31 percent interest over a twelve-year period." Id.

The present matter is factually similar to Heos. The Agreement provides for the monthly payment amount and the number of monthly payments, without reference to a particular interest rate amount. The cumulative amount of these monthly payments compute to a payment of a 15% annual rate of interest in addition to the payment of the $36,000 balance of the purchase price.

Therefore, based on the language of the Agreement as well as the parties' actions after the entry of the Agreement, the Court finds that parties intended for the Agreement to include the payment of interest at a rate of 15% per annum.

## CONCLUSION

Based on the foregoing, the Court finds that the Agreement is an executory contract in the form of an installment sales contract, which provides for 15% interest over its twenty-year term. The Proposed Chapter 13 Plan correctly designates the Agreement as an executory contract under 11 U.S.C. § 365; however, as the Agreement provides for interest, the Proposed Chapter 13 Plan incorrectly indicates that the purchase price under the Agreement has been paid and the Subject Property should be presently deeded to Debtor. Therefore, for these reasons, Forester's objection to confirmation is sustained. Debtor shall submit an amended plan within ten (10) days from the entry of this Order or the Chapter

13 Trustee may move to dismiss this case if Debtor fails to file an amended plan pursuant to this Order or seek to convert this case to a case under chapter 7.

**AND IT IS SO ORDERED.**

Columbia, South Carolina
May 11, 2017

**FILED BY THE COURT**
**05/11/2017**



Entered: 05/11/2017

*/s/ John E. Waites*
US Bankruptcy Judge
District of South Carolina

17